UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VICKY LANNIGAN,                )<br>                                              )<br>             **Plaintiff**          )<br>                                              )<br>v.                                           )<br>                                              )<br>S.D. WARREN COMPANY, d/b/a )<br>SAPPI FINE PAPER,              )<br>                                              )<br>             **Defendant**       ) | Civil No. 08-401-P-H |

**ORDER RE: DISCOVERY DISPUTE**

In accordance with my order of May 11, 2009 (Docket No. 29), counsel for both the plaintiff and the defendant have submitted letters addressing their remaining discovery disputes, namely: (i) whether files of both permanent and temporary workers are discoverable, as the plaintiff contends, or solely files of temporary workers, as the defendant asserts, and (ii) whether, as the plaintiff contends, the personnel file of Richard Bennoch is discoverable, which the defendant contests.

The letters reveal no real dispute as to the factual backdrop relevant to resolution of the instant discovery disputes. The plaintiff was assigned by a temporary employment agency, Alternative Solutions, Inc. ("ASI"), to work in the defendant's debit/credit department from March 17, 2005, through August 1, 2007, at which time she tripped at work and broke her hip. She underwent hip replacement surgery and was prepared to return to work on September 12, 2007.

1

After her August 1 injury, her accounts were redistributed among her co-workers. The defendant never asked ASI for another temporary worker to replace her while she was convalescing.

When an ASI representative phoned the defendant to inform it that the plaintiff was prepared to return to work, the defendant stated that it had decided to assign the work that the plaintiff had been doing to a newly-established permanent collections representative ("CR") position that was going to be posted shortly, and that meanwhile there continued to be no need for a temporary worker. The defendant told ASI to make certain that the plaintiff knew that the defendant wanted her to apply for the new position. The plaintiff did so. She emerged as one of two finalists for the position, but the defendant ultimately chose the other finalist, Mr. Bennoch, to fill it. Mr. Bennoch started the permanent CR position in January 2008.

The plaintiff alleges that the defendant violated her rights under the Family and Medical Leave Act ("FMLA") and the Maine Human Rights Act ("MHRA") when it (i) refused to reinstate her to her temporary position after she recovered from her surgery and (ii) chose to hire Mr. Bennoch over her for the permanent CR position.

At her deposition, the plaintiff testified that she and Mr. Bennoch were both equally qualified for the CR position. When asked to identify evidence of the defendant's wrongdoing or the discriminatory conduct forming the basis of her complaint, she testified:

> When I came into the interview with Veronica and Glen, there was some Sappi employees coming out to greet me and everything; ask me how I was. And Sandy Penna was one of them, Veronica obviously was one; and they were, like "do you need anything?"; you know, "Would you like me to help you? Are you in pain?" Like they asked me about my hip and how I was doing with it when I came in for that interview.

### I.  Request To Discover Files of Permanent Employees

The parties' first discovery dispute implicates the plaintiff's Interrogatories Nos. 12, 13, 14, 16, 17, and 18 and Document Requests Nos. 14 and 28.  She seeks, *via* the interrogatories, to discover information and/or documents bearing on complaints within the last 10 years of (i) disability discrimination and (ii) discrimination on the basis of an employee's need for medical leave and/or FMLA leave.  *Via* the document requests, she seeks similar materials covering the past five years.  The defendant has agreed to produce responsive information and/or documents concerning temporary workers.  Thus, the only remaining dispute concerns access to information and/or documents regarding "permanent" employees.

The plaintiff makes a plausible case that complaints made by both types of employees are relevant for purposes of her FMLA and MHRA claims.  She asserts that during the time that she worked for the defendant's debit/credit department, the defendant's management supervised her, controlled her schedule, provided her with the tools that she needed to perform her job, directed her work flow, controlled her rate of pay, and acted as her employer in all respects, except that it did not issue her paychecks or pay for her benefits.

That type of control has been found to suffice to hold an employer accountable under the MHRA or the FMLA even for a purported "temporary worker" or "independent contractor."  *See, e.g.*, 29 C.F.R. § 825.106(a) & (b)(1) ("Where two or more businesses  exercise some control over the work or working conditions of the employee, the businesses may be joint employers under the FMLA. . . .  [J]oint employment will ordinarily be found to exist when a temporary placement agency supplies employees to a second employer."); *Gavrilovic v. Worldwide Language Res., Inc.*,

441 F. Supp.2d 163, 175-76 (D. Me. 2006) (purported independent contractor qualified as company's employee for purposes of MHRA when company directed her day-to-day activities, maintaining significant control over the manner and means by which she performed her duties as well as the details of her performance). Notably, the defendant identifies no manner in which the FMLA or the MHRA differentiates between discrimination against temporary workers and discrimination against permanent workers.

That said, I agree with the defendant that the plaintiff's interrogatories are overbroad and burdensome insofar as they seek information going back 10 years, long before the plaintiff was ever hired in the temporary position in issue. For that reason, as well as to forestall any need to extend the parties' June 2 discovery deadline or June 19 deadline for filing dispositive motions, I conclude that the relevant interrogatories should be limited to the period commencing on January 1, 2005, just prior to the plaintiff's start of temporary employment with the defendant.

## II.  Request To Discover Mr. Bennoch's Personnel File

The dispute over the discoverability of the Bennoch personnel file turns on the effect of the plaintiff's statement at her deposition that Mr. Bennoch was just as qualified as she was. She now seeks to discover his personnel file to determine whether in fact there is any evidence that he was less qualified than her. The defendant contends that her statement at deposition rendered Mr. Bennoch's qualifications a non-issue, by which I understand it to argue that the plaintiff waived the point. As a result, the defendant reasons, the request for Mr. Bennoch's personnel file is intrusive and unjustified, particularly in view of the plaintiff's failure to identify any discriminatory intent on the defendant's part in choosing Mr. Bennoch over her.

4

The plaintiff contends that her comment did not moot the issue of Mr. Bennoch's qualifications given that she has never seen the information contained in his personnel file.  She offers to consent to a confidentiality order in order to protect his privacy.

The plaintiff has the better argument.  Mr. Bennoch's file may contain information showing that, unbeknownst to the plaintiff when she expressed her opinion at deposition without the benefit of his personnel file, he is in fact less qualified in some respect or respects than her.  Such information, in turn, could bolster a case of discriminatory intent.  She has not waived the right to explore this possibility in discovery.  Mr. Bennoch's privacy rights can be adequately protected *via* a confidentiality order, as the plaintiff suggests.

For the foregoing reasons, I ***ORDER*** that the defendant produce to the plaintiff no later than noon on Friday, May 29, 2009:

1.    The materials sought by Document Requests Nos. 14 and 28, as well as responsive information concerning "permanent" workers sought *via* Interrogatories Nos. 12, 13, 14, 16, 17, and 18, but only covering the period from January 1, 2005, to the present.

2.    The personnel file of Richard Bennoch, subject to a confidentiality order modeled on the Form Confidentiality Order appended to this court's Local Rules.

***SO ORDERED***.

Dated this 19th day of May, 2009.

    /s/  John H. Rich III
    John H. Rich III
    United States Magistrate Judge